STATE NAT. BANK OF LINCOLN, NEBRASKA, *v.* YOUNG and others.

*(Circuit Court, D. Nebraska.* 1883.)

1. LETTER OF CREDIT—WHAT IS NOT.

A letter such as the one following, written by the defendants to the plaintiff, does not constitute a letter of credit:

" CHICAGO, 7-23-1880.

" *State National Bank, Lincoln, Nebraska*—GENTLEMEN: Mr. Dawson, of Dawson & Young, has been to see us, and has explained their business to our satisfaction, and we wish them to continue with us, and we expect to take care of them and pay drafts as heretofore.

" Respectfully,          WILLIAM YOUNG & Co."

2. CONTRACT—AGREEMENT TO ACCEPT DRAFT.

Nor does the same amount to an agreement to accept any drafts which Dawson & Young, or either of them, might draw on William Young & Co., the defendants. To constitute a valid and binding promise to accept the draft of another, the draft must be described in terms not to be mistaken.

3. SAME—DEPARTURE FROM TERMS.

Any departure from the terms of an agreement to accept the bill or draft o another, will not bind the party sought to be charged as acceptor.

Demurrer to Petition.

*Mason & Whedon,* for plaintiff.

*Bisbee, Ahrens & Hawley* and *Field & Holmes,* for defendants.

DUNDY, D. J.   It is stated in the petition that Dawson & Young were largely dealing in and shipping live-stock to Chicago; that generally they consigned the same to William Young & Co., the defendants, at Chicago, who were then doing business as commission merchants; that Dawson & Young were in the habit of drawing their drafts on Young & Co. for the stock shipped, and that the same were cashed by the plaintiff at the request of Dawson & Young, and that the same, with one exception, were paid by the defendants; the payment of one was refused, and that the same was afterwards paid by Dawson; that subsequently Dawson went to Chicago and saw the defendants, and arranged with them for future acceptances, and, pursuant to the arrangement then made, the defendants wrote to the plaintiff a letter, of which the following is a copy:

" CHICAGO, 7-23-1880.

"*State National Bank, Lincoln, Nebraska*—GENTLEMEN: Mr. Dawson, of Dawson & Young, has been to see us, and has explained their business to our satisfaction, and we wish them to continue with us, and we expect to take care of them and pay drafts as heretofore.

" Respectfully,          WILLIAM YOUNG & Co."

That the said letter was placed in the hands of the officers of the banks; that after the letter had been so received by the plaintiff, Dawson, on the thirty-first of July, 1880, drew two drafts on the defendants, each for the sum of $2,000, and on the third of August Dawson drew another draft for the sum of $1,000, all of which were payable at sight; that the said drafts were cashed by the plaintiff, and that the same went to protest and were never accepted or paid by the defendants.

To this the defendants interpose a general demurrer.

If the letter in question cannot be regarded as an agreement to accept the bills or drafts thereafter to be drawn by Dawson & Young, nor as a letter of credit, then there is no good cause of action stated in the petition. It lacks the usual formalities, and the indispensable requisites of an ordinary letter of credit, so that it is altogether unnecessary to consider it in that connection. The plaintiff treats the letter as an agreement to accept the bills to be drawn by Dawson & Young, and as such we will consider it, because there is nothing stated in the petition, independent of the letter, that would in any way tend to fix any liability on the defendants.

Questions of this sort were quite frequently discussed in the several courts of this Union down to the year 1817, when a decision of the first importance and by the highest authority was finally made.

The English cases bearing upon the subject in hand were fully considered by the court, and, though perhaps not uniform, the principle settled thereby was adopted by our own court, to which it has ever since adhered. The rule deduced from those cases, and which was stated and applied in the first of the leading cases decided in this country, is—

"That a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance binding the person who makes the promise." *Coolidge* v. *Payson,* 2 Wheat. 66.

The rule here enunciated has been repeatedly recognized and followed by the supreme court, and its soundness is now believed to be unquestioned. *Schimmelpennich* v. *Bayard,* 1 Pet. 264; *Boyce* v. *Edwards,* 4 Pet. 111.

This being the rule, it follows that a letter, to bind the writer in such cases, *must be written within a reasonable time before or after the date of the bill to be accepted.* The letter must *describe the bill in*

*terms not to be mistaken*.   The letter must *contain a promise to accept such a bill*.   The letter must be *shown, or its contents made known to, the party for whom it was intended*.   And the *party for whom the letter was intended must have taken the bill or advanced his money on the* CREDIT OF THE LETTER, *and not otherwise*.   We must apply this rule to the letter described in the plaintiff's petition, and determine the *character* and value and efficacy of the letter by that standard.

The letter bears date the twenty-third of July, 1880, and was placed in the hands of the officers of the plaintiff bank soon afterwards, and before the bank cashed any of the drafts.   The drafts were drawn on the thirty-first of July and the third of August, respectively.   That would seem to be *within a reasonable time* after the receipt of the letter by the bank, and it is not made to appear how any injury could result to the defendants by mere lapse of time between the date of the letter and the cashing of the drafts.   But this is not where the real difficulty is to be found.   It is stated that "Mr. Dawson, of Dawson & Young, has been to see us, and has explained their business to our satisfaction, and we wish them to continue with us."   So far there is nothing about the letter of a dubious or uncertain character, or that could deceive or mislead any one.   But it is further stated, "and we expect to take care of them and pay drafts as heretofore."   Just how they were to be taken care of does not appear by the letter, nor by averment in the petition.   The letter states that they expect to pay drafts as *heretofore*.   But *how* did they treat them "heretofore?"   As stated in the petition, by paying part, and by refusing to accept or pay the other part.   If, then, the letter had contained an unequivocal *promise* to pay "drafts as heretofore," would a prudent man be likely to rely on such a promise, knowing at the time that a part only of such drafts had been paid, and that at least one theretofore had been repudiated by the drawee.   Would he be likely to part with his money on the faith of such a letter?   Ordinary prudence, it seems to me, would stop short of making advances under such circumstances.   But the great trouble and inherent difficulty about this letter is, it contains no *agreement* or *promise* to pay or accept the drafts of Dawson & Young.   It is simply stated: "We expect to  *  *  *  pay drafts as heretofore."   That is not enough.   There is no *promise* to pay *any* drafts "as heretofore."   There is no draft or drafts described in "terms not to be mistaken."   In the absence of such *description* and a promise to pay, no liability attaches.   To say, "*We expect to pay drafts as heretofore*," is not equivalent to saying, "*We agree to pay drafts as heretofore*."   To hold other-

wise would be doing violence to language and principle alike. There may have been many and good reasons for expecting to pay the drafts, while in reality the apparent reasons were unreal and illusory. However this may be, I am of opinion that the defendants did not *promise* to accept or pay the drafts described in the petition, and that they incurred no liability by writing the said letter; and that they reserved to themselves the right to refuse payment or acceptance of all the drafts described in plaintiff's petition.

There is another point which might be fatal to the plaintiff's right to recover, even if we could regard the letter as an absolute promise to pay the drafts of Dawson & Young. The fair construction to be placed on the letter would lead us to conclude that the writer had in his mind the drafts of Dawson & Young, which they expected to "pay as heretofore." The drafts actually repudiated by the defendants were not drawn on them by Dawson & Young, but by Dawson alone. So if the letter had fully described the drafts to be drawn by Dawson & Young, and the defendants had promised to accept and pay them when so drawn, still I think even then they would be under no sort of legal obligation to accept and pay the drafts drawn by Dawson alone. It seems unnecessary to elaborate, as the correctness of this proposition, it is submitted, cannot be controverted.

The demurrer is sustained.