# The Western Union Telegraph Co. v. Meyer.

*Action against Telegraph Company for Failure to pay Money as agreed, on a Contract for Telegraphic Money Order.*

1. *Appeals from justice's court; how tried.*—Appeals from justice's judgments are to be tried on appeal according to equity and justice, and the declaration filed on appeal, is not subject to technical rules of pleading, and is sufficient if it shows in general terms a debt due, or a contract to be performed, and a breach thereof..

[Western Union Telegraph Co. v. Meyer.]

2. *City Court of Selma, judgment of; when will not be reversed for erroneous ruling on demurrer.*—A judgment rendered by the City Court of Selma, the presiding judge determining both law and fact, as required when a jury is waived, will not be reversed, merely because of erroneous ruling on demurrer to defective counts of the complaint filed on appeal from a Justice's Court, if there is one good count, and the judgment is right on all the evidence, which is fully set out in the record.

3. *Payment of money order to impostor; when telegraph company is not liable for.*—An imposter at Cincinnati, sent a dispatch in the name of B., over defendant's line, to C. at Selma, Alabama, requesting C. to send a telegraphic money order to B. at Cincinnati. C. thereupon purchased of defendant, at Selma, a telegraphic money order payable to B. at Cincinnati, and defendant paid the money there to the imposter, who was the sender of the message,—*held:*

1. Where there is nothing to create suspicion in the minds of the agents of the telegraph company, it is the duty of the party of whom the request is made to remit the money, to ascertain for himself whether he who makes the request, is the person he professes to be.

2. In the absence of anything generating suspicion, the telegraph company has no right to refuse payment of the money to him in reply to whose message it was sent; and is not liable for a payment made *bona fide* to such person, though it turns out that he was an imposter.

APPEAL from City Court of Selma.

Tried before Hon. JON. HARALSON.

The appellee, Meyer, commenced this action against the appellant, the Western Union Telegraph Company, before a justice of the peace, who rendered judgment in favor of the plaintiff. The defendant appealed to the City Court. The plaintiff filed a complaint in that court containing three counts, which was afterwards amended. The third count only need be noticed, and that was as follows: "Plaintiff claims of defendant, a body corporate, the sum of fifty dollars, for that on the 2d day of October, 1875, the defendant being engaged in the business of telegraphing, and sending money by telegraphic orders, between the city of Selma in the State of Alabama, and the city of Cincinnati in the State of Ohio, received in the course of their said business from the plaintiff at Selma, the sum of forty dollars, which for a valuable consideration then and there paid by the plaintiff to the defendant, it agreed and promised in writing by 'W. M. Nettles, manager' at Selma, to pay in a reasonable time to one Max Reis, in said city of Cincinnati. The plaintiff avers that said defendant has wholly failed to pay said sum of fifty dollars, or any part thereof, to the said Max Reis, or to the plaintiff, though hitherto often requested by the plaintiff so to do. Wherefore plaintiff is damaged," &c.

This count was demurred to on the following, among other grounds: first, that it does not appear that the said Max Reis ever demanded the money at the Cincinnati office; second, the count does not show any right in plaintiff to reclaim

the money sued for, from Max Reis, or to demand it from defendant; third, that it does not appear from the count that there was any breach of the contract before suit brought. This demurrer, as well as a demurrer to the other two counts, was overruled. The parties waived a jury, and a trial was had before the judge alone. The facts of the case are thus stated by Mr. Justice MANNING:

Appellee, Meyer, received through appellant's telegraph line, a dispatch from Cincinnati, signed "Max Reis," supposed to be from his nephew, who was then on his way from New York to Selma,—to the effect that he had lost his ticket and money between Pittsburg and Cincinnati, and desired plaintiff to send to him at the latter place, forty dollars by telegraph immediately. This was done, plaintiff being then absent, by his son and agent Marcus Meyer, who received therefor from the company's manager at Selma, a writing signed by him as manager, of the tenor following: "Received from Joseph Meyer forty dollars to be paid to Max Reis at Cincinnati, Ohio." A statement appended of the premium and cost of telegram showed that the total sum received by the company was $42.38. The company on the same day handed over $40, in Cincinnati, to the person who sent the dispatch to plaintiff. This was a large stout man, apparently thirty-five or forty years old with a heavy beard; but he was not known to the company's agent, or identified as a person whose name was "Max Reis." Plaintiff's nephew, Max Reis, was a youth of eighteen years, without a beard, and weighed one hundred and fifteen pounds; and on his arrival soon afterwards at Selma, his kindred there learned from him that he had not sent the dispatch imputed to him, or received the forty dollars. He was a witness, also, at the trial of this cause.

Both Marcus and Joseph Meyer immediately, and several times, demanded back the money from the telegraph company through its manager at Selma; and at his request, Max Reis was taken to the office for him to see and talk with on the subject. This manager communicated the demand to his superior in the same service, at Mobile, who was the proper person to receive it from him. And nothing having been done in the matter by the company, or response made to plaintiff's demands, he brought this suit five months afterwards before a justice of the peace, and obtained a judgment against the company for the forty dollars. From this decision the company appealed to the City Court of Selma,

in which judgment was again rendered against the company ; and from it an appeal is taken to this court.*

W. R. NELSON, for appellant.

WHITE & WHITE, *contra*.

MANNING, J.—The judge of the City Court is authorized to decide causes upon the evidence as well as the law, unless a trial by jury be demanded by one or the other of the parties. This cause was tried by the judge alone; and a bill of exceptions in the record sets forth for our consideration all the evidence that was submitted to him.

"All actions before justices, founded on any contract, express or implied, must be brought in the name of the party really interested therein whether he have the legal title or, not.—Code of 1876, § 3603 (3204).

"The declaration or statement in a case of appeal from a justice of the peace, is not subject to the technical rules of pleading. If it shows in general terms a debt due, or contract to be performed and a breach, it is sufficient."—1 Brick. Dig. 114, § 77; *Hanks v. Hinson*, 4 Port. 509; *Spann v. Boyd*, 2 Stewart, 480; *Morrison v. Morrison*, 4 Stew. 444.

Such cases are to be tried on appeal "according to equity and justice."—Code, § 3121 (2721).

Guided by these rules, we think the amended count, third in the complaint, was sufficient, and that however defective the first and second counts may have been, yet since a trial was had upon the complaint as amended and upon evidence which is all set out in the record, the overruling of the demurrers was not an error that should work a reversal of the judgment.

In regard to the merits of the case : The contract of the company was with plaintiff to pay forty dollars for him at Cincinnati, to "Max Reis," supposed by plaintiff to be his nephew. The money was not paid to the nephew, but to one whose name was unknown to the company. He was the person, though, who sent the dispatch to Meyer,—and was doubtless an impostor.

The company and Meyer, were both deceived. Which must bear the loss ? We find no decision in such a case.

The argument for defendant is : The company was not in fault for sending at the instance of one who seemed to be

---

†The opinion contains a synopsis of the argument of the counsel.

among strangers, and represented himself to be unfortunate, a message for pecuniary relief to a person supposed to be his friend. It was the duty of this person to ascertain for himself that the dispatch was not spurious. When he sent the money, the company was entitled to consider it as intended for him who sent the dispatch. To require him before receiving it, to prove his identity or name, might deprive an unfortunate person thus detained in a place where he was not known, of needed aid from distant friends; and the company would by its refusal, subject itself to the expense and annoyance of a suit which it would probably be unable to defend.

On the other hand, it may be said: The receiver of the dispatch can not possibly know who sent it. In the absence of notice from the company to the contrary, he might justly presume that the sender of the dispatch had been vouched for to the agents of the company, by some one they knew, who was acquainted with him. It being directed that the money should be paid to a person of the name of Max Reis, it was the company's duty not to pay it to any one else. If it lacked proof concerning his identity, having control of the telegraph, it could easily through its manager at Selma have obtained from plaintiff, information of particulars, that would enable its agents, by interrogation of the sender of the message, to ascertain whether he was an impostor or not. Questions to attain that end, might easily be framed. As no inquiries on the subject were made, plaintiff might well suppose that the company did not desire more information than it had. By engaging in the business of transferring money by telegraph, between persons at a distance from each other, for which it charged large commissions, it took upon itself the responsibility of doing the service correctly, and like a banker who by mistake, pays a draft to some one who falsely personates the payee, or a carrier for hire, who delivers goods to one not the consignee, must make good the amount so lost. And if the company is not held to the duty of taking pains to ascertain the identity of the person to whom money transferred by telegraphic orders is to be paid, nothing would be easier than to use the telegraph as an instrument for committing frauds.

My brothers think that where there is nothing to create suspicion in the minds of the company's agents, it is for the party on whom the demand is made, to ascertain for himself whether he who makes it, is the person he professes to be, and that the company has no right to refuse payment of the

money to him in reply to whose message, the order to pay it is sent. I was strongly inclined to the other conclusion. But the case is a new one, and I defer to their opinion.

The other questions made will probably not arise again.

Let the judgment of the City Court be reversed, and the cause be remanded.