WESTERN UNION TELEGRAPH CO. v. TOTTEN et al.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1905.)

No. 2,175.

1. DAMAGES—PROOF MUST SEPARATE LEGAL FROM ILLEGAL.

Proof in an action of tort of a certain amount of loss, which includes both legal damages and those too remote to warrant recovery, in the absence of any evidence from which the jury can determine the amount of either, will not sustain a verdict for more than nominal damages. Courts and juries may not lawfully transfer the property or money of one citizen to another by guess.

2. TELEGRAPH COMPANIES—NEGLIGENCE—DUTY TO EXERCISE REASONABLE CARE TO ASCERTAIN IDENTITY OF SENDERS OF MESSAGES.

In the absence of notice of facts or circumstances which would awaken inquiry and arouse suspicion in the mind of a person of ordinary prudence and intelligence in a like situation regarding the authority to send it of the party who presents a message for transmission, the exercise by a telegraph company and its operators of reasonable care to receive and transmit genuine and authorized messages only does not require them to investigate or ascertain the identity or authority to send it of the person who tenders a message for transmission, whether that message is in writing, or is spoken directly to the operator, or is communicated to him by telephone.

But, when such facts or circumstances come to the notice of the company or of its acting operator, the exercise of reasonable care to transmit genuine and authorized messages only requires the party who receives the notice either to investigate and ascertain the authority of the sender before transmitting the message, or to communicate the facts and circumstances and the inquiry or suspicion to the addressee at or before its delivery.

3. SAME—RECEIPT, WITHOUT INVESTIGATION—EVIDENCE OF NEGLIGENCE.

The receipt and transmission to the addressee of a message to the effect that a bank, in whose name it is telephoned, will honor the checks or drafts of a beneficiary, by an operator who knows the message is telephoned to him by either the beneficiary or by the cashier of the bank, but who does not know by which one, without inquiring into the identity or authority of the sender, constitutes substantial evidence for the consideration of the jury, upon the question whether or not the operator exercised reasonable care to receive and transmit genuine and authorized messages only.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Henry D. Estabrook, James P. Hewitt, and Rush Taggart (George H. Fearons, George H. Carr, A. C. Parker, Craig T. Wright, and John F. Dillon, on the brief), for plaintiff in error.

John L. Stevens and H. E. Fry, for defendants in error.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

SANBORN, Circuit Judge. The plaintiffs below, W. H. Totten and H. C. Totten, who were copartners under the style of the Bank of Gilbert, sued the Western Union Telegraph Company for moneys they were induced to pay upon the checks of Barnes and the orders of his agent, by these telegrams:

> "Denison, Ia., Mch. 5th, 1902.
> "Bank Gilbert, Ia.: Will honor Barnes checks three cars stock.
> "Bank of Denison."

> "Denison, Ia., Mch. 8th, 1902.
> "Bank Gilbert, Ia.: Will honor Barnes checks three cars stock.
> "Bank of Denison."

> "Denison, Ia., Mch. 11th, 1902.
> "Bank Gilbert, Ia.: We will honor draft of E. S. Barnes for three cars stock.
> "Bank of Denison."

—which the defendant received by telephone from either Voss, the cashier of the Bank of Denison, or from Barnes, and transmitted to the plaintiffs. The plaintiffs alleged, and there was evidence tending to prove, that these telegrams were neither sent nor authorized by the Bank of Denison. The evidence at the trial tended to prove these facts: A year or more prior to the dates of the messages, which have been quoted, the Bank of Denison had recommended Barnes to the plaintiffs as an honest man of small means, and he had been buying cattle at Gilbert in this way: He gave to the vendors his checks upon the plaintiffs for the purchase price of the stock. It was not the practice of the plaintiffs to pay these checks until the Bank of Denison, which was a copartnership, had telegraphed to them that they would honor them. Voss, the cashier of the Bank of Denison, testified that for several months prior to February, 1902, they had sent telegrams of the character of those above to the plaintiffs, but that, without notifying the plaintiffs, they had ceased to do so in January, 1902. In reliance upon such telegrams the plaintiffs had paid the checks of Barnes for, and the Bank of Denison had reimbursed them for, about 60 car loads of stock before the telegrams involved in this action were sent. When the plaintiffs received these telegrams they do not appear to have telegraphed an acknowledgment of them to the Bank of Denison or to have attempted in any way to verify them, but they proceeded to pay checks of Barnes for cattle which his agent bought and then to draw upon the Bank of Denison for the amounts they expended. Barnes procured and sold the cattle before these drafts reached the drawees, who refused to pay them.

Nearly all the messages received by the telegraph operator at Denison came to him over the telephone. The Bank of Denison sent most of their messages in this way, and Barnes many of his. The bankers

frequently sent messages concerning the business of Barnes, and they had arranged with the defendant that all their telegrams about his business should be paid by Barnes. One Lyman was telegraph operator at Denison. He had held this position from February 5, 1902. The telegraph office was at the railroad station. Mahoney was the station agent, and he had told Lyman that, when Barnes had telephoned a certain message in the name of the bank concerning the latter's payment of his drafts a month or two before, he had informed the assistant cashier of the fact that Barnes was sending telegrams about money in the name of the bank, and the bank officer had replied that he guessed it was all right. Lyman testified that almost all the messages sent by Barnes, while he was the operator at Denison, were sent in the name of the bank, that no one but Voss or Barnes ever sent any messages to him about the business of Barnes, and that he received the telegrams involved in this action by telephone from either Barnes or Voss, but he did not know which one of them sent them. There was conflicting testimony upon the question whether or not the bankers were informed by the telegraph company before these messages were sent that Barnes was sending telegrams in the name of the bank, and there was no evidence that they had ever objected to that course of action.

In this state of the case, the question whether or not the operator at Denison exercised reasonable care to receive and transmit genuine and authorized messages only was for the jury, and the motion to direct the return of a verdict for the defendant upon the ground that there was no substantial evidence of its negligence was properly denied. A consideration of the reasons and a review of the authorities pertinent to the question has led to the conclusion that the legal measure of reasonable care in cases of this kind is expressed in these rules:

In the absence of notice of facts or circumstances which would awaken inquiry and arouse suspicion in the mind of a person of ordinary prudence and intelligence in a like situation regarding the authority to send it of the party who presents a message for transmission, the exercise by a telegraph company and its operators of reasonable care to receive and transmit genuine and authorized messages only does not require them to investigate or ascertain the identity, or authority to send it, of the person who tenders a message for transmission, whether that message is in writing, or is spoken directly to the operator, or is communicated to him by telephone. But, when such facts or circumstances come to the notice of the company or of its acting operator, the exercise of reasonable care to transmit genuine and authorized messages only requires the party who receives the notice to investigate and ascertain the authority of the sender before transmitting the message, or to communicate the facts and circumstances and the inquiry or suspicion to the addressee at or before its delivery. Bank of Havelock v. Western Union Telegraph Co., 141 Fed. 522.

The facts that the telegrams in this case were for the benefit of Barnes and promised the payment of his checks for considerable amounts of money by the Bank of Denison, and that the operator knew that they were communicated to him in the name of the bank either by their beneficiary or by the cashier of the apparent obligor in them,

and that he did not know which one spoke them to him, constitute substantial evidence for the consideration of a jury, upon the question whether or not these facts and all the other pertinent facts and circumstances of this case would have awakened inquiry and aroused suspicion in the mind of a person of ordinary prudence and intelligence in a like situation regarding the identity and the authority to send them of the party who presented these messages. Elwood v. Western Union Tel. Co., 45 N. Y. 549, 556, 6 Am. Rep. 140. It may be that the presentation for transmission of a message in the name of a bank, which may charge it with liability for a considerable sum of money by one for whose benefit it is evidently sent, would naturally raise a suspicion and awaken inquiry in the mind of a reasonably prudent man as to his authority. And if he knew that such a message was spoken to him over the telephone by either the cashier of the bank or its beneficiary, it may be that it would cause him to inquire into the identity of the sender. There was sufficient evidence here to warrant the submission to the jury of the question whether or not the telegraph operator exercised reasonable care in the receipt and transmission of these messages. The telegrams were sufficiently definite to warrant reliance and action upon them. That is certain which may be made certain, and the purchase price of the cars of stock specified in the messages was not so uncertain that rational action might not be based upon them.

But this is an action for damages for the alleged false representations embodied in the telegrams, and those damages only may be recovered which were the natural and probable effect of the deceit they produced. Those representations were limited to the statement that the Bank of Denison would pay the checks and a draft of Barnes for a certain number of cars of stock. The proof at the trial was that the plaintiffs in reliance upon the telegrams paid out a certain sum for the cars of stock, for the wages of the agent of Barnes, for the hire of livery teams, for exchange, and for some incidental expenses of the bank. But there was no evidence of the amount paid for the cars of stock or for the other items, respectively. The defendant requested the court to instruct the jury that the plaintiffs were not entitled to recover more than nominal damages because there was no proof by means of which they could distinguish the amount paid by the plaintiffs for the cars of stock from the amounts they expended for the other items. The court refused this request and instructed the jury that, in case they found for the plaintiffs upon other issues, they might return a verdict in their favor for the amount paid for the stock, but that they could allow nothing to them for the amounts paid to the agent of Barnes for his wages or for exchange or for the expenses of yarding the stock. The payment by the plaintiffs of the agent of Barnes, of the hire of the teams, of exchange, and of "some incidental expenses of the plaintiffs," which are neither itemized nor aggregated, was not the natural or probable effect of the false representations embodied in the telegrams; the loss occasioned by that payment was too remote to constitute legal injury, and, as the court below well said, the jury could not legally allow the plaintiffs to recover the amounts expended for these purposes.

The burden was upon the plaintiffs to prove the extent of their legal injury and to separate it from that damnum absque injuria for which courts and juries alike are forbidden by the law to grant relief. They failed to bear this burden. They failed to produce any evidence of the amount which they expended for the cars of stock without the payments for the hire of the livery teams, the wages of the agent, the exchange, and the incidental expenses. It may be said and it is probably true that the larger part of their expenditures was made to pay for the stock, and, if there were in the record competent evidence of even the approximate amount of the other items or lawful testimony that they did not exceed a certain sum, the error of this ruling might be corrected by a reduction of the judgment by that amount. The record, however, is barren of all evidence of this nature, and there is no way but by conjecture by which the jury could have determined the amounts which the plaintiffs paid for the cars of stock, or the amounts which they paid for the other items which have been mentioned, and neither courts nor juries may lawfully transfer the property or money of one citizen to another by guess. The ruling constitutes a fatal error, and the judgment must be reversed.

In view of this fact a discussion and decision of each of the other questions presented by the many objections at the trial would be useless. The opinion of this court in Bank of Havelock v. Western Union Telegraph Co., 141 Fed. 522, and a brief reference to the nature of this action and of the proof necessary to sustain it will constitute a sufficient guide for the second trial. This action is for damages for false representations. Those damages only which were caused by the representations may be recovered. Payments for stock by the plaintiffs which were not made in reliance upon, and induced by, the telegrams, are not recoverable by them in this action. The burden is upon them to prove the specific amounts they were induced to pay by the telegraphic messages, and general statements of witnesses that a certain amount in the aggregate was paid or lost, or that certain sums were within the amounts indicated by the telegrams, are not competent evidence to establish the damages, in view of the facts that the payments induced by each telegram were made in small amounts at different times on checks of Barnes or upon orders of his agent.

The payment by the plaintiffs of the checks of Barnes or of money for the purchase by Barnes of cars of stock after they had received the telegrams and in reliance upon them was the natural and probable effect of their transmission, and the loss sustained by such payments is not too remote to constitute resulting legal injury. The existence of a state of facts which would have created a cause of action by the plaintiffs against the Bank of Denison, if the telegrams had been genuine, is not a condition precedent to the existence of a cause of action in favor of the plaintiffs against the telegraph company for the damage which was caused by the false representations contained in the telegrams. Bank of Havelock v. Western Union Telegraph Co., 141 Fed. 522.

The plaintiffs may not lawfully recover of the telegraph company, if the Bank of Denison authorized Barnes, or estopped themselves

from denying his authority, to send the messages in their name. They may not recover if the plaintiffs contributed to their own loss by their failure to exercise in the transaction that degree of care to prevent their loss which bankers of ordinary caution and prudence in similar circumstances ordinarily use. A trial of the case in accordance with these views will probably result in a just and final verdict.

The judgment below is reversed, and the case is remanded to the Circuit Court with instruction to grant a new trial.