MARAB v. WESTERN UNION TELEGRAPH CO.

1. Telegraphs and Telephones—Transfer of Money—Negligence—Delivery—Identification.

In an action against a telegraph company for money received to transmit to a third person, to whom defendant did not deliver the funds, the question of negligence was for the jury upon evidence showing that plaintiff received a telegram from one Saida Abda, a woman, asking for money; that plaintiff went to the telegraph office, and, being unable to write English, the clerk filled out a blank; that without asking plaintiff whether the addressee was a man or woman, the clerk wrote in the name as it appeared on the telegram, and signed with plaintiff's name a blank clause in the order waiving identification; that the money was paid to the sender of the request for money who was a man and who fraudulently furnished evidence of his identity as Saida Abda.

2. Same—Evidence—Cross-Examination.

It was not error to permit plaintiff's counsel to show, on cross-

examination of defendant's clerk, that the application blank filled out for plaintiff by the clerk contained on its face instructions, where practicable, to prefix Mrs. or Miss to the name of a female addressee, the evidence showing that the receiving office paid the money to the party claiming it, assuming that the payee was a man.

Error to Wayne; Murfin, J. Submitted June 19, 1911. (Docket No. 102.) Decided October 2, 1911.

Assumpsit by John Marab against the Western Union Telegraph Company for money had and received. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Joslyn* (*Benjamin S. Pagel*, of counsel), for appellant.

*Joseph T. Schiappacasse*, for appellee.

MOORE, J. This case was tried before a jury, which returned a verdict in favor of the plaintiff in the sum of $105.50. The case is brought here by writ of error.

There is not very much dispute about the facts. Mention will be made of the disputed facts later. The plaintiff is a Syrian, living in Detroit. He was acquainted with Mrs. Saida Abda, who was a native of the same town in Syria from which plaintiff came. Mrs. Abda was a resident of Detroit, and received a telegram, notifying her that her daughter was held on Ellis Island, N. Y. Mrs. Abda went to New York, and arrived at a hotel kept by a Syrian about midnight. She there made the acquaintance of another Syrian, who said he would go with her to Ellis Island. She showed him the telegram she had received, and let him take it. He kept the telegram, and went to a telegraph office and telegraphed plaintiff a request for $100, and signed the telegram "Saida Abda." The plaintiff received the telegram, and, thinking it was from Mrs. Abda, went to the telegraph office to send her the money. He does not speak or read

English.   He took the telegram to the office, and showed it to the agent of the telegraph company.

The record shows as follows:

"Clement A. Hardy, sworn on behalf of the defendant, testified as follows:   I am in the employ of the Western Union Telegraph Company.   Was a transfer clerk of that company in October, 1909.   Mr. Marab presented himself at my window to transfer some money to New York.

"*Q.* Will you tell us what took place at that time?

"*A.* He laid the telegram down on the counter, which read to wire $100 to New York.   I asked him if he could write, and he said, 'No,' so I filled out the order for him.   I asked him if the party was a stranger at New York City, and he said, 'Yes.'   I then filled out the application for him, and gave him a receipt for the money.

"*Q.* Is that the application?   [Showing paper to witness.]

"*A.* That is the application.   That was copied from his telegram."

THE WESTERN UNION TELEGRAPH COMPANY
Incorporated
Robert C. Clowry, Prest. and Genl. Mgr.

## Domestic Transfer Order

If after the receipt of this domestic order at the paying office, payment cannot be made within 72 hours (exclusive of Sundays and holidays), the order will be canceled and refund made to the sender.

No. 143                    Detroit Mich., Oct. 21, 1909.
The Western Union Telegraph Company
    Pay to Saida Abda, A T 20 rom M. P. office, Care Western Union Tel. Co., New York, N. Y. One hundred and $\frac{00}{100}$ Dollars.

(The address should be full and clear.   If to a woman, give prefix Mrs. or Miss, if practicable.)

Signature:   Mr. John Marab.
Address:    65 E. Atwater St.

(C) As the above-named payee may not be able to produce positive evidence of personal identity, I hereby authorize and direct the Western Union Telegraph Com-

pany to pay the sum named in this order, at my risk, to such person as the Telegraph Company's Agent believes to be the above-named payee.

Signature:   Mr. John Marab.

---

NOTE—Should the sender of the transfer prefer that the payee be required to produce the necessary evidence of his identity, he should sign the following:

(V) The undersigned directs that the above amount be paid only on the production by the payee of positive evidence of personal identity.

Signature. _____ _____

---

| | | |
|---|---|---|
| Principal, | $100 00 | Time Filed |
| Premium, | 1 00 | |
| Teleg. tolls, | 80 | _____ a. m. |
| Total, | $101 80 | _____ p. m. |

"*Q.* Did you receive the sum of $100 at that time?

"*A.* I did.   The receipt which has been read in evidence was the receipt I gave him for the $100."

Cross-examination:

"I have told you now everything that transpired between me and Mr. Marab, as far as I know.   This is a copy of one of our order blanks [blank shown witness], and an exact copy of the order blank I used at that time. I filled it out right in front of him, but he never had possession of it that I know of; in fact, I signed his name. The signature on the order blank is not Marab's signature.

"*Q.* Did you say anything to him about any rule of the company?

"*A.* No; I did not.

"*Q.* You knew that he could not write?

"*A.* Yes.

"*Q.* He told you that?

"*A.* Yes.   *   *   *

"*Q.* You did not ask Mr. Marab whether this consignee of the money was a man or a woman?

"*A.* No; I did not.   I took it from the telegram.

"*Q.* You did not ask him?

"*A.* No.

"*Q.* You know that the company prints a caution on this very order that you had possession of, and which you

did not show or read or give possession of to Mr. Marab, a caution, ' if the order is to a woman, prefix Mrs. or Miss should be given, if practicable.'

"*Mr. Pagel:* I object to the answer being taken to that question. (Objection overruled. Defendant excepts.)

"*Q.* You knew at that time that that was printed on there ?

"*A.* Yes; I did."

The plaintiff in his testimony denies that he told the agent that Saida Abda was a stranger in New York, and testified on the cross-examination that the agent did not ask him. The receipt referred to is as follows:

"10 / 21 / 1909.

" Received of Mr. John Marab, one hundred and $\frac{00}{100}$ dollars to be paid to Saida Abda at New York, subject to the terms and conditions of transfer order of this date.

"C. H. CHADWALLADER,

" Manager.

"Charges paid $1.80."

The agent telegraphed the money to New York, and it was paid to the man who sent the telegram; he being first required to bring a letter from the hotel keeper and from the operator who transmitted his message.

Part of the record is as follows:

"*A.* Before I paid the money, I gave him a receipt to sign, and he signed ' Sada Abda,' and he said there's two ways of writing the name, and I had him sign ' Saida Abda' underneath the first signature. The payment was made October 21, 12:55; and the document I hold in my hand is the original receipt, signed in my presence, when the money was paid."

" Receipt offered in evidence, and marked ' Defendant's Exhibit G,' and reads as follows:

" 'Oct. 21, 1909.

" '$100.00.

" 'Received of the Western Union Telegraph Co. (Incorporated) one hundred 00/100 dollars, in payment of money transfer made by said company, from John Marab, Detroit, Mich., to me.

" 'SADA ABDA..

" 'SAIDA ABDA.

" 'Oct. 21/09, 12:55.

" 'Letter Introduction, etc.' "

When Mrs. Abda returned to Detroit, it was learned she had not sent for any money. Demand was made on defendant company. The demand was refused, and this litigation followed.

In his charge to the jury, the court said in part:

" The primary inquiry before you is, under the facts and the law, as I shall give it to you, as to who is going to lose apparently $100. In order that the defendant company that is sued in this action be held liable for the loss of this money, it is incumbent, gentlemen of the jury, upon the plaintiff to show that they have been guilty of negligence, through their officers, servants, and agents, in handling the transaction complained of here. They are not held, gentlemen of the jury, in the ordinary method of doing business, to any higher degree of care than ordinary care. Any other rule of law would undoubtedly handicap and embarrass business, which nowadays moves, as we all know, at a fairly rapid rate. A telegraph company—all telegraph service—serves a proper and useful purpose in modern industrial life; and I do not believe any rule of law that would handicap them in giving the service which they are intended and designed to give would be proper rule of law. But, gentlemen of the jury, in handling a transaction, such as the transaction that has been detailed before you, they are bound to use ordinary care, and if they neglect that then they are liable. So, it will be your problem, gentlemen of the jury, in the light of the facts as they have been detailed before you, to ascertain and determine whether or not they, through any of their servants or agents, neglected to exercise that degree of care which an ordinarily careful and prudent person would be expected to exercise, in the light of all the circumstances, for the purpose of avoiding any mistake such as occurred here. If they neglected that duty, then they are liable. If they did not neglect that duty, then they are not liable. Now that you have heard the testimony in this case, and, as I said before, it is not in serious conflict, and it is for you to say, in the light of all the facts and circumstances as detailed before you in this lawsuit, whether they neglected to exercise that degree of care which an ordinarily careful and prudent person would be expected to exercise, in the light of those circumstances, for the purpose of avoiding any mistake.

"In this case, gentlemen, as in all cases in this descrip-

tion, the burden of proving negligence on the part of the defendant company is upon the plaintiff. That means that he must make out his case before you by a fair preponderance of evidence. That does not necessarily mean that he must produce before you the greater number of witnesses; but he must produce before you such testimony as satisfies your minds that he has the right of the case. If he has done that, then he has sustained the burden of proof that the law expects. Your verdict in this case, gentlemen of the jury, will be one of the two things. It will either be, no cause of action, or it will be in the sum of $105.50; $5.50 representing the agreed interest computation, which counsel have agreed is a correct computation. So that your verdict will be either for the plaintiff in the sum of $105.50, or it will be for the defendant, no cause of action."

One of defendant's requests to charge was for a directed verdict. Some of the others were as to the degree of care required on the part of the defendant.

Counsel in their brief say:

" Telegraph companies are not guarantors of the correct receipt and transmission of messages. * * * Actions for misrepresentations of messages through negligence rest upon the duty to exercise care to tell the truth, upon the breach of that duty, upon reliance upon the misrepresentation, and upon resultant injury." *Western Union Telegraph Co.* v. *Schriver*, 141 Fed. 547, 72 C. C. A. 605 (4 L. R. A. [N. S] 678).

They also cite *Bank of Havelock* v. *Telegraph Co.*, 141 Fed. 530, 72 C. C. A. 580 (4 L. R. A. [N. S.] 181). In the last-named case, it was held that no such negligence had been shown as to establish liability. In the first-named case, in the opinion from which counsel quote, appears the following in the headnote:

" The rule that, where one of two innocent parties must suffer from the fraud of a third, he who furnishes the means to commit it must bear the loss, is limited in its application to cases in which the party chargeable makes the third party his real or apparent agent, cases in which he provides the means intentionally, or for a dishonest purpose or negligently, and cases in which he derives a bene-

fit from the fraud of the third party.   It does not govern the great majority of cases, where one innocently, for an honest purpose and with reasonable care, furnishes to a third party the means by which he perpetrates a fraud, from which he who provides the means derives no benefit."

In the case of *Western Union Telegraph Co.* v. *Totten, et al.,* 141 Fed. 533, 72 C. C. A. 591, appears this language:

"In this state of the case, the question whether or not the operator at Denison exercised reasonable care to receive and transmit genuine and authorized messages only was for the jury; and the motion to direct the return of a verdict for the defendant, upon the ground that there was no substantial evidence of its negligence, was properly denied.   A consideration of the reasons and a review of the authorities pertinent to the question has led to the conclusion that the legal measure of reasonable care in cases of this kind is expressed in these rules:   In the absence of notice of facts or circumstances which would awaken inquiry and arouse suspicion in the mind of a person of ordinary prudence and intelligence in a like situation, regarding the authority to send it of the party who presents a message for transmission, the exercise by a telegraph company and its operators of reasonable care to receive and transmit genuine and authorized messages only does not require them to investigate or ascertain the identity, or authority to send it, of the person who tenders a message for transmission, whether that message is in writing, or is spoken directly to the operator, or is communicated to him by telephone.   But when such facts or circumstances come to the notice of the company, or of its acting operator, the exercise of reasonable care to transmit genuine and authorized messages only requires the party who receives the notice to investigate and ascertain the authority of the sender, before transmitting the message, or to communicate the facts and circumstances and the inquiry or suspicion to the addressee at or before its delivery. *Bank of Havelock* v. *Western Union Telegraph Co.,* 141 Fed. 522 [72 C. C. A. 580, 4 L. R. A. (N. S.) 181].

"The facts that the telegrams in this case were for the benefit of Barnes, and promised the payment of his checks for considerable amounts of money by the Bank of Denison, and that the operator knew that they were communicated to him in the name of the bank, either by their ben-

eficiary or by the cashier of the apparent obligor in them, and that he did not know which one spoke them to him, constitute substantial evidence for the consideration of a jury, upon the question whether or not these facts, and all other pertinent facts and circumstances of this case would have awakened inquiry and aroused suspicion in the mind of a person of ordinary prudence and intelligence in a like situation regarding the identity and the authority to send them of the party who presented these messages. *Elwood* v. *Western Union Tel. Co.*, 45 N. Y. 549, 556 (6 Am. Rep. 140). It may be that the presentation for transmission of a message in the name of a bank, which may charge it with liability for a considerable sum of money by one for whose benefit it is evidently sent, would naturally raise a suspicion and awaken inquiry in the mind of a reasonably prudent man as to his authority. And if he knew that such a message was spoken to him over the telephone, by either the cashier of the bank or its beneficiary, it may be that it would cause him to inquire into the identity of the sender. There was sufficient evidence here to warrant the submission to the jury of the question whether or not the telegraph operator exercised reasonable care in the receipt and transmission of these messages."

Counsel cite and rely upon the case of *Western Union Telegraph Co.* v. *Mayer*, 61 Ala. 158 (32 Am. Rep. 1). In that case the opinion concludes as follows :

" My Brothers think that, where there is nothing to create suspicion in the minds of the company's agents, it is for the party on whom the demand is made to ascertain for himself whether he who makes it is the person he professes to be, and that the company has no right to refuse payment of the money to him, in reply to whose message the order to pay it is sent. I was strongly inclined to the other conclusion. But the case is a new one, and I defer to their opinion."

The court consisted of three judges at that time. The case can be distinguished from the case at bar in this: It does not appear that the agent of the company filled out the order, or that knowledge was possessed by the agent of the company that was not also possessed by the agent of the person sending the money.

This brings us to another question.    We again quote from the brief of counsel:

"It was error of the most prejudicial kind to permit plaintiff's counsel to show by defendant's witness that the application blank of defendant, used by plaintiff in this case, among other things, contained an instruction to the company's employés to the effect that, 'if the order is to a woman, the prefix Mrs. or Miss should be given, if possible.'    The reasons are fully set forth in the well-considered opinion in *Fonda* v. *Railway Co.*, 71 Minn. 438 [74 N. W. 166, 70 Am. St. Rep. 341]."

There are several answers to this contention:

*First.* The instruction to the employés of the company was contained on the face of the order defendant introduced in evidence.

*Second.* It was proper cross-examination.

*Third.* Defendant introduced in evidence the testimony of Mr. Carley, its general transfer agent at 195 Broadway, N. Y., who testified in part as follows:

"There was nothing in the order to indicate that the payee was a woman; hence the assumption that it was a man.    Where a transfer is sent to a woman, the transmitter makes it known that it is for a female, in which case Miss or Mrs. always goes in the order; and the fact that Miss or Mrs. was not used in the transfer was, of itself, an indication that the money was payable to a man. On that occasion caution was used, under the circumstances, to satisfy us that the person who came for the money was Saida Abda, for whom it was intended.    The documents that have already been read into the record, and identified as defendant's exhibits, are those that were presented on that occasion."

We have a case, then, where it appears that one, not familiar with the English language, desired to transmit a sum of money to a woman.    The agent, without asking questions and relying upon a telegram purporting to be signed by a woman, for it appears that Saida Abda is a woman, filled out an order without indicating it was to be paid to a woman, and without asking the person applying for the order whether it was to be sent to a woman.

It also appears that he was familiar with the instruction to the employés, and had it before him, and that plaintiff had no knowledge of this instruction. We think the record discloses facts justifying the jury in finding negligence.

Error is assigned upon the failure to give defendant's requests to charge. So far as these requests were proper to be given, they were covered by the general charge.

The judgment is affirmed.

McAlvay, Brooke, Blair, and Stone, JJ., concurred.