WESTERN UNION TELEGRAPH COMPANY *v.* LAPENNA.

[No. 10,829. Filed December 6, 1921. Rehearing denied March 7, 1922. Transfer denied October 24, 1922.]

1. BANKS AND BANKING.—*Transmission of Money by Wire.— Care Required.—Payment to Impostor.*—A telegraph company in transmitting money by wire acts as a common carrier, and is bound to use ordinary care; and if, through want of such care, it pays the money to an impostor, it is liable. p. 603.

2. BANKS AND BANKING.—*Transmission of Money by Wire.— Care Required in Paying Money.—Waiver of Identification.*— The fact that one delivering money to a telegraph company for transmission by wire signed a waiver of identification, providing that the payee should not be required to produce

positive evidence of personal identity, but that the company might pay the money to such person as its agent believed to be the payee named, did not relieve the company from the exercise of reasonable care in identifying the person to whom the money should be paid, or in arriving at a belief as to the identity of such person; and, if it failed to exercise reasonable care in that regard, and as a result thereof it paid the money to an imposter, it was liable to the sender. p. 607.

3. CARRIERS. — *Contracts against Liability for Negligence. — Validity.*—Although a carrier may by special contract free itself from many common-law liabilities, it cannot contract for exemption from its own fraud or negligence. p. 608.

4. BANKS AND BANKING.—*Transmission of Money by Wire.— Payment to Impostor.—Questions of Fact.—Negligence.*—In an action by the sender to recover money transmitted by wire and paid to an impostor, whether the company's agent was guilty of negligence in delivering the money to an impostor, who did not even claim to live at the address given, but who, in the name of the addressee, had sent the telegram in response to which the money was sent, *held* a question of fact. p. 609.

From Marion Superior Court (A4,818) ; *Theophilus J. Moll,* Judge.

Action by Mike Lapenna against the Western Union Telegraph Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Pickens, Moores, Davidson & Pickens* and *Francis R. Stark,* for appellant.

*Harry E. Raitano* and *Holmes & McCallister,* for appellee.

MCMAHAN, J.—Complaint by appellee against appellant to recover a sum of money which appellee paid to appellant for transmission by telegraph from Portsmouth, Ohio, to Indianapolis, Indiana, which it is alleged appellant failed to pay to the designated payee.

Appellee and Alfredo Macchi are cousins, the former residing at Portsmouth, Ohio, the latter at Indianapolis. An impostor knowing of the relationship between appellee and said Macchi went to the office of appellant in Indianapolis and informed a clerk in appellant's office

that he wished to send a telegram but was unable to write it and requested the clerk to write it for him. The telegram dictated by the impostor was in Italian and when translated, read: "Send me One Hundred Seventy Five Dollars at once. In sick condition; want you to respond at once with money." This telegram was signed "Alfredo Macchi." The impostor gave no address but informed the clerk that he would call for the money. Appellee received the message and the next day went to appellant's office in Portsmouth, taking an interpreter with him, and through the interpreter informed appellant's agent that he desired to transmit said sum of money as requested in said telegram. Appellee paid appellant's clerk at Portsmouth $175 and received a receipt therefor reading as follows:

"Received from Mike Lapenna, One Hundred Seventy Five and no/100 Dollars, to be paid to Alfredo Macch, Indianapolis, Ind., subject to the terms and conditions of money transfer order of this date." (Signed Olga Thoroman for transfer agent, charges paid $1.70). Said clerk in the presence of appellee and the interpreter filled out a money transfer order on one of appellant's blanks used for that purpose and signed appellee's name thereto, which transfer order reads as follows:

"Portsmouth, O., 7/8, 1918.
"The Western Union Telegraph Company:
Subject to the conditions on the back hereof.
Pay to Alfredo Macch
(The address should be full and clear.  *  *  *)
151 S. Detroit St.
Indianapolis, Ind.
One seventy-six and 00/100 Dollars.
(Signed) Mike Lapenna."

Following this was a waiver of identification in the following words:

"I desire that the above named payee shall not be re-

quired to produce positive evidence of personal identity and hereby authorize and direct the Telegraph Company to pay the sum named in this order at my risk to such person as its agent believes to be the above named payee. (Signed) Mike Lapenna.

"NOTICE: If the sender of this transfer desires that the payee be required to produce positive evidence of personal identity, the above provision should not be signed."

There were certain stipulations on the back of this order but they are immaterial in so far as this appeal is concerned and need not be set out. · The evidence as to what took place at the time appellee paid the money to appellant's clerk is conflicting. The clerk at Portsmouth, in testifying as to what took place there, said that appellee through the interpreter, who spoke broken English, gave her to understand that he wanted to wire his cousin some money and gave her the name and address of the person to whom the money was to be sent, that she wrote the money transfer order and explained that the party to whom the money was being sent could get it by being identified by some person, or by showing letters, bank books, receipts or something of that kind, that she told him of the two ways, which the interpreter explained to appellee and that appellee, or rather the interpreter, said: "that it was all right by letter" and that "he did not want him identified by any person," that in the presence of appellee and the interpreter she signed appellee's name to the transfer order and to the waiver of identification. Appellee, however, says that no such conversation took place.

The telegram from the transfer agent at Portsmouth to the transfer agent at Indianapolis was a code telegram reading as follows: "Affirm Alfred Macch, 151 South Detroit St., Indianapolis. Mainor mackle Mike Lapenna Caution."

The word "affirm" is the code word signifying the date, viz., July 8, 1918; "Mainor mackle" meant $176; "Caution" indicated that payee could be identified by letters, bank books, receipts, etc.   If the word "vigilant" had been used instead of "caution" it would have indicated that the payee should be personally identified by some person.   By this message the transfer agent at Portsmouth directed appellant's transfer agent at Indianapolis to pay the money to Alfred Macch, 151 South Detroit Street, when he produced satisfactory evidence of his identity, which under the waiver of identification could be by letters, bank books, receipts, etc., identification by some person known to the agent of appellant not being necessary.

Upon receipt of this message the transfer agent at Indianapolis sent a notice by messenger to the payee at 151 South Detroit Street, notifying him of the receipt of the telegraphic order to pay him a sum of money *upon satisfactory evidence of identity,* and directing him to bring the notice with him when he called for the money.

Before the messenger returned the impostor called for the money.   The money order clerk in attempting to satisfy himself that the person calling for the money was the person to whom the money should be paid questioned him relative to the amount of money he expected and where it was coming from.   The impostor, after naming the amount he expected and from whom he expected it, pointed to the young lady in the office who the day before had written the telegram for him.   This clerk identified the impostor as being the person who had sent the telegram to appellee.   A draft was drawn on the Exchange National Bank of Chicago payable to the order of "Alfred Macch" $176.   The impostor was then asked to endorse his name on the back of this draft, which he did, and having his attention called to the fact

that name was blotted or blurred and being requested to again write his name, wrote "Alfredo Machi," and noticing that there was but one "c" in the name as written, on his own volition inserted another "c" therein so that the name as written by him was "Alfredo Macchi." After the draft was so endorsed, the money was paid to the impostor.

Appellant insists:    (1) That in the absence of any evidence of bad faith or fraud on its part it is not liable on account of having paid the money to the wrong person; (2) that the money was paid to the man who telegraphed for it and that while it was not paid to the man appellee intended there is no evidence that it was not paid to the man to whom it was addressed or to a person named Alfredo Macch, and that the question is not to whom did appellee mean it to be paid, but to whom did he send it; (3) that aside from the waiver of identification appellant is not liable for failure to deliver the money to "such person as its agent believes to be the payee" in the absence of actual negligence.

No authorities are necessary to support the proposition that appellant in the transfer of the money in question was acting as a common carrier.    A telegraph company in handling transactions such as the one under consideration is bound to use ordinary care and if through want of such care appellant paid the money to an impostor it is liable. *Marab* v. *Western Union Tel. Co.* (1911), 167 Mich. 192, 132 N. W. 568.

The facts in the case just cited are very similar to the facts in the case now under consideration.    Marab was a Syrian living in Detroit.    He was acquainted with one Mrs. Saida Abda, a Syrian woman also residing in Detroit.    The latter, having received a telegram that her daughter was being held on Ellis Island, went to New York and arriving late at night, went to a hotel

kept by a Syrian. There she made the acquaintance of another Syrian to whom she showed the telegram after which she let him take it. He kept the telegram and went to a telegraph office and telegraphed Marab requesting $100 and signed the telegram "Saida Abda." Not being able to read or speak English, Marab took the telegram to the telegraph office and showed it to the agent of the company, and, as here, the agent filled out the transfer order, signed Marab's name both to the transfer order and to the waiver of identification, the latter being identical in form with the waiver in the instant case. The agent at Detroit telegraphed the money to New York and it was paid to the man who sent the telegram, he being first required to bring a letter from the hotel-keeper and from the operator who transmitted his message to Marab. The New York agent, before paying the money to the impostor, gave. him a receipt to sign and which was signed by impostor "Sada Abda." The impostor remarked that there were two ways of writing the name, after which the agent had him sign "Saida Abdá" under the first signature. The money was then paid to the impostor. There was judgment against the telegraph company from which it appealed. The court in affirming the judgment said: "We think the record discloses facts justifying the jury in finding negligence."

In *Bank, etc.* v. *Western Union Tel. Co.* (1905), 141 Fed. 522, 72 C. C. A. 580, 4 L. R. A. (N. S.) 181, 5 Ann. Cas. 515, the court, in discussing the duty of a telegraph company to investigate the identity and authority of those presenting telegrams to them for transmission, after holding that a company might take it for granted that those presenting telegrams had the right to send them, said: "But notice of facts and circumstances which would put a person of ordinary caution upon inquiry is notice of all the facts to which a reason-

ably diligent inquiry would lead. And, whenever facts or circumstances come to the notice of a telegraph company, or of its operators, which would arouse the suspicion of a person of ordinary prudence and intelligence in a like situation, and would suggest to his mind that the party who presents the message is not authorized to send it, the exercise of reasonable care requires them either to investigate and ascertain his authority before transmitting it, or to communicate the facts and circumstances and the suspicion to the addressee at or before the delivery of the message."

In the case just cited, the court, after referring to *Western Union Tel. Co.* v. *Meyer* (1878), 61 Ala. 158, 32 Am. Rep. 1, where an impostor who was unknown to the telegraph operator presented for transmission a message to Meyer signed "Max Reis," wherein Meyer was requested to send him money by telegraph. Meyer, having a nephew named Max Reis, complied with the request and the telegraph company paid the money to the impostor sending the message. It was held that there was nothing to create suspicion in the mind of the company's agent that the party to whom it paid the money was not the person to whom Meyer intended it should be paid, and for that reason the telegraph company was not liable on account of having paid it to an impostor. The court in *Bank, etc.,* v. *Western Union Tel. Co., supra,* in discussing *Western Union Tel. Co.* v. *Meyer, supra,* on page 532, said: "No decision of any court has been cited or discovered which is inconsistent with the rule that in the absence of notice of facts or circumstances which would awaken inquiry and arouse suspicion in the mind of a person of ordinary prudence and intelligence in a like situation, regarding the authority of the party who presents a message for transmission to send it, the exercise by a telegraph company and its operators of reasonable care to receive and trans-

mit genuine and authorized messages only does not require them to investigate or ascertain the identity or authority to send it of the person who tenders a message for transmission. * * * Tried by this rule there is no evidence in this case of any negligence of the defendant." See also, *Western Union Telegraph Co.* v. *Totten* (1905), 141 Fed. 533, 72 C. C. A. 591.

In *Western Union Telegraph Co.* v. *Schriver* (1905), 141 Fed. 538, 540, 72 C. C. A. 596, 598 (4 L. R. A. [N. S.] 678), it is said: "A telegraph company owes the duty to exercise reasonable care to receive and transmit authorized messages only to the addressees of messages, and to those persons who, the telegrams inform it, have a beneficial interest in the dispatches it transmits. It owes this duty to these parties because injury to them is the natural and probable consequence of its want of care, an effect which it may reasonably anticipate from its notice of the fact that they are interested in the messages."

In speaking of the liability of a telegraph company to receive and transmit authorized messages only, the court on page 541 says: "There remains but one ground upon which this action may stand, and that is the breach of the duty which the telegraph company, in common with every other party, owes to those to whom it makes representations, which it may reasonably anticipate that they may rely and act upon, to exercise reasonable care to make those statements true. This is an action for the breach of this duty. It is an action of tort for a false representation in the nature of a false warranty caused by failure to exercise reasonable care to receive and transmit authorized messages only."

The waiver of identification in the instant case does not purport to be a complete waiver of identification or to authorize appellant to pay the money to anyone without some identification. The language of the waiver of

identification is, "I desire that the above named payee shall not be required to produce positive evidence of personal identity" and authorized appellant to pay the money to "such person as its agent believes" to be the payee named.

It is to be observed that the application or order which appellee signed at Portsmouth, Ohio, requesting appellant to transfer the money indicated and called the attention ·of appellant to the fact that the money was to be paid to "Alfred Macch," 151 South Detroit street, Indianapolis. The message received at the Indianapolis office from the Portsmouth office also directed the Indianapolis office to pay the money to Alfred Macch, 151 South Detroit street. Appellant with this information before it sent a notice to the party living at 151 South Detroit street but as heretofore stated paid the money to one not living at 151 South Detroit street, but to one who, when asked where he was staying, gave an altogether different address. There is no evidence that the impostor made any claim that he resided at 151 South Detroit street. There is evidence that the identification card and letters produced by the impostor bore an address but there is no claim or contention in this case that the address was 151 South Detroit street or that his name was Alfred Macch. Indeed he gave a different name and a different address.

Appellant contends that in accepting the money it undertook to deliver it "to such person as its agent believes to be the above named payee;" that its undertaking was not to pay to the person its agent reasonably believed, or should in the exercise of diligence have believed to be the person named, and that it is absolved when payment is made to one whom its agent in fact believed was the payee.

The waiver of identification under consideration did not relieve appellant from the exercise of reasonable

care in identifying the person to whom the money should have been paid, or in arriving at a belief as to the identity of such person. Appellant, notwithstanding the waiver of identification, was required to exercise reasonable care in that behalf, and if it failed to do so, and as a result of such failure it paid the money to an impostor it is liable to appellee for any loss occasioned by reason of such neglect.

While a carrier may by special contract free himself from many common-law liabilities, he cannot contract for exemption from his own fraud or negligence.

3. *Terre Haute, etc., R. Co.* v. *Sherwood* (1892), 132 Ind. 129, 31 N. E. 781, 17 L. R. A. 339, 32 Am. St. 239. As said by this court in *Parrill* v. *Cleveland, etc., R. Co.* (1900), 23 Ind. App. 638, 654, 55 N. E. 1026, "If he is actually guilty of negligence, he will be held liable for a loss which otherwise might be deemed a loss by an inevitable casualty. * * * It would be against public policy to permit common carriers, * * *, to relieve themselves by contract entirely from their public duty. Therefore, if the contract except absolutely from the liability of the carrier losses from particular causes, still there will be a duty of the carrier not to permit such loss through the negligence of the carrier or its servants. If it be strictly true to say, as is sometimes said, that where there is a contract the general duty of the carrier in respect to which a tort may be committed is founded on contract, it must also be allowed that the law adds to the contract of a common carrier an implied warranty of exceptional stringency not applicable to the contracts of private carriers. The duty to exercise care and diligence is, in such case, in antagonism to the express terms of the contract; and whether it be said to be implied as a part of the contract, or that the contract should be construed as if the duty were expressly recognized therein, or it

be said to be a duty *ultra* the contract, it is a duty imposed by law upon the common carrier as such,—it is a duty arising, by force of law, out of the unequal relation into which the parties have entered by contract."

The question as to whether appellant's agent was negligent in paying the money to a man who signed his name "Alfredo Macchi" and gave his address as the Spencer House, when the directions were to pay it to Alfredo Macch, 151 South Detroit street, was, under the evidence, a question of fact for the court. The court found appellant was guilty of negligence in delivering the money to the wrong person, and there is evidence to support that finding.

The judgment is therefore affirmed.